573 F.2d 802
 17 Fair Empl.Prac.Cas. 168, 16 Empl. Prac.
Dec. P 8177
UNITED STATES of America, Appellant in No. 77-1711,
v.
CITY OF PHILADELPHIA, a Municipal Corp., Joseph F. O'Neill,
Comm., Philadelphia Police Department, Foster B. Rose,
Director of Personnel, City of Philadelphia, George Bucher,
Leonard L. Ettinger, and Harrison J. Trapp, Comm., City of
Philadelphia Civil Service Comm., Appellants in No. 77-2141,
Fraternal Order of Police, Intervening Defendant.
Appeal of CITY OF PHILADELPHIA, in Nos. 77-1707/77-1709.
Appeal of FRATERNAL ORDER OF POLICE, in No. 77-1710 and No. 77-2140.
 Nos. 77-1707 through 77-1711, 77-2140 and 77-2141.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 20, 1977.
Decided Feb. 27, 1978.
 
 1
 Sheldon L. Albert, City Sol., City of Philadelphia, Philadelphia, Pa., for appellants in Nos. 77-1707 through 77-1710, 77-2140 and 77-2141 and appellee in No. 77-1711.
 
 
 2
 John M. Gadzichowski, Employment Section, Civ. Rights Div., Dept. of Justice, Washington, D. C., for appellee in Nos. 77-1707 through 77-1710, 77-2140 and 77-2141 and appellant in No. 77-1711.
 
 
 3
 Drew S. Days, III, Asst. Atty. Gen., Washington, D. C., David W. Marston, U. S. Atty., Philadelphia, Pa., David L. Rose, Walter W. Barnett, Richard S. Ugelow, Vincent F. O'Rourke, Jr., Dept. of Justice, Washington, D. C., for United States.
 
 
 4
 James M. Penny, Jr., Stephen Saltz, Deputy City Solicitors, Ralph J. Teti, Asst. City Sol., Philadelphia, Pa., for City of Philadelphia, Pa.
 
 
 5
 Burton A. Rose, Fraternal Order of Police, Philadelphia, Pa., for Fraternal Order of Police.
 
 
 6
 Before ROSENN and GARTH, Circuit Judges, and LACEY,* District judge.
 
 OPINION OF THE COURT
 
 7
 LACEY, District Judge.
 
 PRELIMINARY STATEMENT
 
 8
 Appeal Nos. 77-1707, 77-1708 and 77-1709 were taken by the defendants from orders of the United States District Court for the Eastern District of Pennsylvania granting the United States' motions for injunctive relief. Appeal No. 77-1710 was taken by the defendant-intervenor Fraternal Order of Police from an order of the district court granting a motion of the United States for injunctive relief. Appeal No. 77-1711 was taken by the United States from an order of the District Court denying a motion for injunctive relief. Our jurisdiction over these appeals was properly invoked under 28 U.S.C. § 1292(a) (1); and they are now before us by virtue of our order of consolidation of June 28, 1977.
 
 PROCEDURAL HISTORY
 
 9
 On February 19, 1974 the United States filed suit against the City of Philadelphia, the Commissioner of Police, the Director of Personnel, and the City of Philadelphia Civil Service Commissioners (hereinafter the City or defendants).[1] The complaint alleged, inter alia, that the Philadelphia Police Department was engaged in a pattern or practice of employment discrimination against females in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the fourteenth amendment, and the guidelines of the Department of Justice and the Law Enforcement Assistance Administration (LEAA) which provide for equal employment opportunity in federally assisted programs and activities, 28 C.F.R. § 42.201 et seq. Specifically, the complaint alleged that the defendants had discriminated against female employees and applicants for employment in their recruiting, hiring, promotion, transfer and assignment practices.[2]
 
 
 10
 The United States' action was consolidated with a related lawsuit filed on February 12, 1974 by Policewoman Penelope Brace.[3]
 
 
 11
 On February 10, 1976 trial in the consolidated cases commenced. After the plaintiffs had completed their case-in-chief and the defendants had begun to present their evidence, the United States and the defendants agreed to the entry of an interim order, which was entered on March 5, 1976 (the March 5 order).
 
 
 12
 On March 15, 1976 the district court entered an order dismissing this case without prejudice to the rights of the parties to seek enforcement of the March 5 order.
 
 
 13
 The five appeals before us are from decisions of the district court on four separate motions filed by the United States subsequent to the entry of the March 5 order. They relate to three separate matters:
 
 
 14
 Nos. 77-1707 and 77-1708 are appeals by the City and concern the applications of incumbent policewomen to transfer from the all female line of progression (policewoman) to the all male line of progression (policeman).
 
 
 15
 Nos. 77-1709 and 77-1710 are appeals by the City and the Fraternal Order of Police, respectively, from an order requiring the defendants to hire twenty female police officers in conjunction with the hiring of 100 new male police officers.
 
 
 16
 No. 77-1711 is an appeal by the United States from the failure of the district court to find that the defendants discriminated against Shirley Terry, a female police officer, when they fired her based on the expressed reason that her pregnancy rendered her physically incapable of continuing to perform the duties of a police officer.
 
 DISCUSSION
 
 17
 a. The March 5 Order.
 
 
 18
 This order suspended the trial for a period of up to two years, during which time the defendants would be permitted to develop additional evidence.[4] Also, the order provided substantive interim relief for females, summarized as follows:
 
 
 19
 1. The defendants were enjoined from engaging in acts or practices which had the purpose or effect of discriminating on the basis of sex;
 
 
 20
 2. The job titles of policeman and policewoman were abolished and the entry level position became police officer;
 
 
 21
 3. The defendants were instructed to fill approximately 470 police officer vacancies with both qualified males and qualified females. The City was directed to graduate one hundred qualified women from the next five classes at the police academy, or earlier. Of these, no less than twenty were to be in any such class. Selection was to be based on the eligibility list generated by the May 31, 1975 entrance examination. Upon graduation from the training academy the women were to be assigned to police officer positions.
 
 
 22
 4. Incumbent policewomen (juvenile aid officers) were to be afforded an opportunity to transfer to and compete for promotion within the police officer (policeman) line of progression.
 
 
 23
 5. Finally, the order provided for the district court's retention of jurisdiction and for a deferral of the issues not addressed by the order.
 
 
 24
 In addition to the terms of the March 5 order, Sheldon L. Albert, the Philadelphia City Solicitor, and the defendants' representative, provided the United States with a letter of understanding dated February 27, 1976. In this letter the defendants agreed: (1) to provide the United States with not less than sixty days' notice prior to the filling of any vacancies above the approximate figure of 470 contemplated by the order; (2) to give the United States an opportunity to review, if necessary, records bearing upon the question of comparable experience for females who transfer to police officer; and (3) to consult with the United States on the content of any remedial training to be offered female transferees.
 
 
 25
 b. Hiring of Police Officers in Addition to the Approximate 470 Contemplated by the March 5 Order App. Nos. 77-1709 and 77-1710.
 
 
 26
 On April 1, 1977 the defendants advised the district court that on or about April 18, 1977 they intended to appoint a police recruit class consisting only of 100 men. The United States moved at once to enjoin the noticed hiring unless at least twenty percent (20%) of the new hirees were female, alleging that the additional hiring was violative of Title VII and of the March 5 order, that it perpetuated the effects of past discriminatory employment practices, and that the defendants had failed to give the United States the agreed sixty days' notice prior to the additional hiring.
 
 
 27
 On April 15, 1977 the district court entered an order enjoining the defendants from hiring the all male police class, stating:
 
 
 28
 That the Police Department discriminates against employing women as police officers is uncontested. The threshold question that will not be resolved until all evidence . . . (is) presented to the Court, is whether the Police Department is justified in refusing to employ females as police officers because of the "bona fide occupational qualification" exception provided for in Section 703(e)(1), 42 U.S.C. § 2000e-2(e)(1). The burden of proof is upon the defendants to demonstrate that their contention falls within the "bona fide occupational qualification" exception. Weeks v. Southern Bell Telephone Co., 408 F.2d 228 (5th Cir. 1969). As previously noted, the resolution of this issue is not ripe for decision. Concluding that the defendants are prima facie in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and presuming that irreparable injury will result from said violation, United States v. Hayes International, 415 F.2d 1038 (5th Cir. 1969), the Court will enjoin the appointment of only males to the Police Academy (App. 760a-761a).
 
 
 29
 After the entry of this order, a further evidentiary hearing was held at defendants' request, following which, on April 25, 1977, the district court amended its order of April 15 and issued a supplemental opinion, stating:
 
 
 30
 During the course of several evidentiary hearings, occurring prior to March 5, 1976, the record clearly established that it was the policy of the police department to reject applications of females for employment as police officers. In fact, the defendants did not contest this allegation but to the contrary relied completely upon the "bona fide occupational qualification" exception provided for in Section 703(e)(1), 42 U.S.C. § 2000e-2(e)(1). Believing that the answer to the qualification issue might be resolved by providing an opportunity for females to perform the duties of a police officer, counsel presented to the Court certain proposals which were acceptable and embodied in the Court's order of March 5th. In substance, the order provided that one-hundred (sic) (100) women were to be employed to fill vacancies in the police department out of approximately 471 existing vacancies. The male and female candidates were not chosen in the order in which their names appeared on the police eligibility list. In order to reach female candidates, it was necessary to pass over males whose position on the list was much higher than the selected females. . . . With respect to future appointments, we were and remain under the impression that the letter and spirit of counsels' agreement as evidenced by the Court's Order contemplated that the proportion of females previously employed would be the standard to be adopted for all future hirings pending final decision of the Court. Without any change in circumstances the police intend to appoint one-hundred (sic) (100) males to the Police Academy excluding all females. To justify this employment practice the defendants now contend that the choice of an all male class is no longer tainted with the color of discrimination in employment because of one's sex. The stipulated facts indicated that the members of the proposed class were taken in rank order from the eligibility list. That 10,551 persons took the examination, 2,252 of whom were women. That the selected males who were to be employed had simply recorded higher marks in the examination as compared with females and thus the gender of the applicant played no part in the employment process. We need not decide that issue, however, for in our view this Court's Order of March 5th closed the question of discriminatory employment and left open only the issue of "bona fide occupational qualification" exception. But that is not the end of our inquiry. As noted in our Opinion of April 15, 1977, the parties had agreed upon sixty (60) days' notice to be given before any new vacancies were to be filled. Unfortunately, the City, in total disregard of its agreement, advised the male members of the contemplated class of their appointment to the Police Academy. The Court has been advised that more than fifty percent of those who received this notice resigned from their previous employment and now are unemployed, their families now suffering from financial insecurity. Had the covenant been followed, it appears apparent that this incident could have been avoided as the appointees would have had sixty days' notice instead of the fourteen days' notice which was given to the plaintiff. We are of the opinion that the circumstances recited above mandate the exercise of the Court's discretion to frame a decree that would provide equitable relief. Erie Human Relations Commission v. Tullio, 403 (493) F.2d 371 (3d Cir. 1974). (App. 783a-786a).
 
 
 31
 The district court's amended order provided in pertinent part:
 
 
 32
 In order to eliminate the hardship sustained by the proposed male appointees and to eliminate alleged discrimination because of sex pending the final resolution of this action, the defendants are directed to hire 120 persons as police officers who are appointed to the police academy. This class of 120 appointees shall be composed of:
 
 
 33
 (a) the 100 males who had previously been notified of their appointment, and
 
 
 34
 (b) 20 females whose names shall be selected in rank order from the current eligibility list, as suggested by the United States. (App. 787a).
 
 
 35
 The City and the Fraternal Order of Police each filed notices of appeal from this amended order on April 26, 1977.[5]
 
 
 36
 We find that the district court acted well within its discretion in entering a preliminary injunction requiring the defendants to meet a hiring goal similar to that of the interim consent order of March 5, when the defendants sought to hire officers in addition to those provided for in that order. Oburn v. Shapp, 521 F.2d 142 (3d Cir. 1975). Given the obvious justification for its finding of discriminatory employment practices, the district court acted properly to frame a decree which would not only further the purposes of Title VII and achieve equality of employment opportunity, Albemarle Paper Co. v. Moody, 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), but would also prevent action by the defendants inconsistent with the March 5 order.
 
 
 37
 The granting of preliminary relief was clearly proper under Oburn v. Shapp, supra. The likelihood of plaintiffs' success on the merits at final hearing is strong, given defendants' admission of sex discrimination in its employment practices and the dubious strength of its "BFOQ" defense. Cf. Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).
 
 
 38
 Nor can we say that the district court erred in presuming irreparable injury would result if it failed to enter a preliminary injunction. United States v. Hayes International Corp., 415 F.2d 1038, 1045 (5th Cir. 1969).
 
 
 39
 Additionally, the district court's order recognized the interests of third parties and the public, and was fashioned to prevent hardship to males who had already left their jobs while preserving for females the same proportionate number of positions in the police department agreed to by the parties in the March 5 order.
 
 
 40
 Accordingly, we affirm the district court order of April 25, 1976, amending order of April 15, 1976, and the order of July 14, 1977 (App. Nos. 77-2140 and 77-2141).c. Transfer of Juvenile Aid Officers (Policewomen) to the Position of Police Officer, Their Qualifications to Perform Non-Sector Assignments, and the District Court's Order They Be So Assigned App. Nos. 77-1707 and 77-1708.
 
 
 41
 The March 5 order provided the opportunity to incumbent juvenile aid officers (formerly policewomen) to transfer to the redesignated job of police officer and required they be given "in special classes, any training received by policemen." The order further provided (App. 794-795):
 
 
 42
 Each such transferee shall be expected to perform the equivalent of at least one year's police officer work unless she has had comparable experience. The question of the comparability of experience shall be submitted initially to the Police Commissioner, who shall act promptly thereon. If the parties cannot agree as to whether any such transferee's experience is comparable to that of one year's experience as a police officer, or any part thereof, the question shall be submitted to the Court for resolution. All such current Juvenile Aid Officers shall be given ninety (90) days from the date of this order (or the date plaintiffs receive their names and addresses, whichever is later) to apply to transfer.
 
 
 43
 Each woman desiring a transfer was advised by the City that (1) her application to transfer to the position of police officer was granted; (2) she did not have experience comparable to a sector patrol officer; (3) she would be required to perform at least one year of sector patrol prior to consideration for transfer to any other assignment; (4) her request for transfer to a non-sector patrol assignment was denied; (5) she was assigned to a sector patrol district; and (6) she was to report to the police academy on December 13, 1976 for training.
 
 
 44
 In addition, Sergeant Cecile Williams was informed that she was to be deprived of the privileges of her rank as sergeant for one year.
 
 
 45
 The United States moved once again for injunctive relief and, after hearing, the district court enjoined the defendants from requiring a year of sector patrol training from the incumbent female officers prior to permitting them to transfer to units within the police department.[6]
 
 
 46
 With regard to Sergeant Williams, the district court ruled that the Police Commissioner was unjustified in directing the removal of her supervisory authority. The court concluded "that she (Sergeant Williams) has an abundance of experience as a supervisor that should enable her to occupy the identical rank that she now holds without stripping her of her present authority." (App. 657a-658a).
 
 
 47
 The defendants filed their notice of appeal from this order on March 9, 1977. App. No. 77-1707.
 
 
 48
 The City did not transfer the applicants in accordance with their requests and the order of the district court. Accordingly, the United States moved for further injunctive relief and, on March 24, 1977, the district court entered an order requiring the immediate transfer of the females involved to non-sector patrol assignments, unless they requested patrol assignment. The district court observed that "the Police Department's obdurate failure to grant the requested assignments, has, as its genesis, the initial action instituted by female applicants for treatment and rights equal to those of their male counterparts." (App. 681a).
 
 
 49
 A notice of appeal from this order was filed by the defendants on April 22, 1977. App. No. 77-1708.
 
 
 50
 The district court did not abuse its discretion when it concluded that the females seeking transfers were qualified to perform non-sector patrol duties. They had been on the police force from two to twenty-two years, and the record adequately supports the district court's determination that their experience was comparable to one year of police officer experience, thus qualifying them to perform non-sector patrol assignments.
 
 
 51
 The defendants' argument that comparability of experience must be ascertained by comparing the applicants for transfer with a hypothetical sector patrol officer must be rejected. Because they were women, the applicants could not have been sector patrol officers and therefore could not have had experience identical to that of a sector patrol officer. To apply a sector patrol standard to a female officer would effectively nullify the transfer provisions of the March 5 order and continue the effects of defendants' discrimination.
 
 
 52
 We also reject defendants' argument that the City's general policy for male police officers has been to require they serve on sector patrol assignment. The record reflects that this avowed policy has not been pursued without exception. Moreover, even if such a policy existed, defendants waived its application here by entering into the agreement reflected in the March 5 order.
 
 
 53
 Finally, defendants' contention that the district court lacked the power to overrule the Police Commissioner's comparability determination is without merit. Such power was specifically conferred by the parties in the March 5 consent order.
 
 
 54
 When the defendants refused to assign the applicants for transfer, notwithstanding the district court's comparability determination, the court did not abuse its discretion in directing such assignment. Franks v. Bowman Transportation Co., 424 U.S. 747, 764, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Albemarle Paper Co. v. Moody, supra, 422 U.S. at 421, 95 S.Ct. at 2373. This is not, as defendants suggest, a case of a district court attempting to run the day-to-day activities of a police department. It is instead a case of a district court fulfilling its obligations under a consent order to see that the persons accorded relief under that order are given the relief to which the order entitles them.
 
 
 55
 The orders of the district court in App. Nos. 77-1707 and 77-1708 are affirmed.
 
 
 56
 d. The City's Discharge of Shirley Terry Solely Because She Was Pregnant App. No. 77-1711.
 
 
 57
 Terry was one of the first females hired as a police officer pursuant to the March 5 order. She commenced her training on May 17, 1976 and was terminated on August 13, 1976 because she was pregnant. The notice of termination indicated her pregnancy had commenced in May 1976 and that a City physician who had interviewed (but had not examined) her in August 1976 reported she was unable to perform the duties of a police officer. The notice then stated (App. 819-820):
 
 
 58
 5. Since you will be unable to participate in the Field Training which is part of the Police Academy's curriculum and the subsequent sector patrol duty which is to be performed by you from Monday, September 27, 1976 through Tuesday, November 16, 1976 (the end of the six (6) month probationary period), the Department will be unable to properly evaluate your ability to perform sector patrol duties.[7]
 
 
 59
 The United States then moved for an order directing the City to reinstate Terry as a police officer, arguing that her dismissal on pregnancy grounds violated the anti-discrimination provisions of the March 5 order, as well as Title VII and the due process clause of the fourteenth amendment. The defendants resisted, primarily on the ground that Terry's firing was justified because her pregnancy prevented her from participating in the study the City was conducting concerning the performance of the female police officers hired pursuant to the March 5 order.
 
 
 60
 After hearing, the district court denied the relief requested by the United States, accepted the defendants' argument, and found that Terry's discharge resulted from an "inability to comply with the demands of police training for the required time . . . (resulting) in the determination to remove her from the test project." (App. 948-949).
 
 
 61
 The United States filed its notice of appeal on May 11, 1977.
 
 
 62
 It is clear that defendants fired Terry solely because she was pregnant. Based upon a physician's interview (and his opinion grounded upon this interview), it was presumed that she could not perform the job of police officer because she was pregnant. There was no evidence she was unable to work. Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), and Turner v. Department of Employment Security of Utah, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975), establish that to apply a stereotyped presumption that a pregnant person is unable to work, and to deny a person the opportunity to prove otherwise, violates the due process clause of the fourteenth amendment. See Gurmankin v. Costanzo, 556 F.2d 184, 185 (3d Cir. 1977). Thus the district court erred in finding that the defendants were justified in discharging Terry.
 
 
 63
 Indeed, the only reliable evidence of Terry's fitness established that she was successfully performing the duties assigned to her at the time she was terminated, that she was in good health, and that she was able to perform all of her duties as a police officer as late as September 14, 1976. (App. 817-818). On the other hand, the defendants' determination was made without any medical examination, reflected the application of a presumption that a pregnant woman cannot perform police officer duties, and failed to give individual consideration to Terry herself, her abilities, and her physical condition.
 
 
 64
 As we have noted, n. 7, supra, Terry was notified that she was being discharged for a reason other than that urged before the district court and here. Whether the discharge was for the reason expressed in the termination notice, or, as later urged by the defendants, because Terry's pregnancy prevented her from participating in the two-year study, the discharge was unlawful.
 
 
 65
 As we have indicated, if the discharge was truly for the reason expressed in the termination notice, then it could not be sustained under LaFleur. If, however, Terry was terminated because, as the defendants urge, she eventually would have become incapacitated due to her pregnancy, and thus could no longer participate in the study, her discharge could not be sustained as a proper exercise of the district court's discretion.
 
 
 66
 There was no requirement contained in the March 5 order that women hired pursuant to that order would have to participate continuously in a two-year study program without taking a leave of absence for pregnancy. Moreover, given the fact of the study as it was ordered, see n. 4, supra (and we express no view on the validity of the study), at the least the subject of pregnancy as it might affect a police officer's performance (both during and after pregnancy) was a highly relevant concern to be considered together with all other circumstances pertaining to women in police service. As such, on this record, it was an abuse of discretion to permit Terry's termination and thus preclude consideration of this issue in the context of the two-year study. Thus the district court abused its discretion in failing to order Terry's reinstatement.[8] The order of the district court is reversed in App. No. 77-1711, and the matter is remanded to the district court with the direction that the City be ordered to reinstate Terry as a police officer.
 
 CONCLUSION
 
 67
 In all except the appeal at 77-1711 which is the government's appeal from the district court's order of March 11, 1977 which denied Terry's reinstatement, we will affirm the orders of the district court. These orders to be affirmed include the March 4, 1977 order of the district court, amending the February 10, 1977 order, concerned with the transfer of women police officers to formerly all-male departments (Appeal No. 77-1707); the March 24, 1977 order, also concerned with the transfer of women officers (Appeal No. 77-1708); the April 25, 1977 order amending the April 15, 1977 order, which required the hiring of 20 women police officers (Appeal Nos. 77-1709, 77-1710); and the July 14, 1977 order concerning the hiring of women police officers as a part of a new hiring of 350 police officers (Appeal Nos. 77-2140, 77-2141).
 
 
 68
 We will reverse the March 11, 1977 order of the district court which is the subject of the government's appeal at 77-1711 and will remand to the district court with the direction that the City be ordered to reinstate Shirley Terry as a police officer.
 
 
 
 *
 Frederick B. Lacey, United States District Court, District of New Jersey, sitting by designation
 
 
 [1]
 The Fraternal Order of Police was permitted to intervene as a defendant by the district court's order of August 5, 1975
 
 
 [2]
 On the same date that the United States filed its complaint, it also filed an application for a temporary restraining order and a motion for a preliminary injunction. In its moving papers it sought to have the defendants restrained from dismissing Policewoman Penelope Brace. It alleged that her impending dismissal was in retaliation for having filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and LEAA. Brace was subsequently reinstated by the City of Philadelphia
 
 
 [3]
 On February 12, 1974 Brace filed an action on behalf of herself and all other females similarly situated. Her complaint also alleged that the Philadelphia Police Department was engaged in a pattern or practice of discrimination against females (Brace v. O'Neill, et al., C.A. 74-339). The Brace action was subsequently stayed, and she filed a separate appeal. On November 10, 1977 we dismissed the appeal for lack of jurisdiction. (Brace v. O'Neill, 567 F.2d 237, 244-245 (3d Cir. 1977))
 
 
 [4]
 Among other things the defendants, relying upon the "bona fide occupational qualification" defense (BFOQ), 42 U.S.C. § 2000e-2(e)(1), wanted to study the performance of women as police officers
 
 
 [5]
 Later, on June 7, 1977, the defendants advised the district court and the parties that they intended to hire an additional 350 police officers. Under the defendants' proposal all of the 350 would have been men. The United States formally opposed the additional hiring because it did not include a hiring goal for females. On July 14, 1977 the district court signed an order which permitted the defendants to hire the 350 officers, so long as 20% Were female. The City and the Fraternal Order of Police have also filed notices of appeal from that order. App. Nos. 77-2140 and 77-2141. These appeals were subsequently consolidated with the present appeals by order of our court. Hence, our determination with respect to the orders of the district court of April 15 and April 25, 1977 is dispositive of these appeals taken from the district court's order of July 14, 1977
 
 
 [6]
 Reviewing the Police Commissioner's initial determination of comparability of experience as it had a right to do under the March 5 order, the district court found the applicants for transfer had "sufficient comparable experience that would, with the exception of transferring to police sector patrol, entitle them to be transferred to any unit in the police department without being required to undergo one year of sector patrol." (App. 657a)
 
 
 [7]
 This notice of termination makes it clear that Terry was not terminated for the reason later asserted in the district court, and here, by the defendants, that her pregnancy disabled her from participating in the two-year study the City was conducting of the performance of the newly appointed female police officers. It would appear that the argument asserted by the defendants before the court below and in this court was an afterthought, grounded upon the understanding that a discharge for the reason stated in the notice was patently unlawful
 
 
 [8]
 Because of our disposition of Terry's claim, we need not decide whether her termination constitutes sex discrimination in violation of Title VII (and of the March 5 order). We note in passing that the Supreme Court has remanded this precise issue to the Court of Appeals for the Ninth Circuit "for further consideration in light of General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and Nashville Gas Co. v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), and for consideration of possible mootness." Richmond Unified School Dist. v. Berg, 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977). As the Second Circuit indicated in Women in City Government United, et al. v. City of New York, et al., 563 F.2d 537, 541 (2d Cir. 1977), equal protection violations, due process violations, and Title VII violations, are not necessarily "variations on the (same) theme."