Frances M. McCOSH, Appellant,

v.

CITY OF GRAND FORKS, a Municipal Corporation; Cyril P. O'Neill, in his capacity as Mayor of the City of Grand Forks and individually; James O. Clague, in his capacity as Chief of Police and individually; Ludwik Kulas, Thomas Hagness, G. Allan Pearson, Henry C. Wessman, Marvin W. Dehn, James F. Johnson, Richard Shea, Reuben Larson, Dennis Gustafson, Markus L. Dahl, Neome Bushaw, Joe H. Ford, Robert A. Hanson and Robert Wedin, each as a member of the Grand Forks City Council and individually; Oliver Thomas, in his capacity as Administrator of the N.D.C.L.E.C. and individually; Ted Gladden, in his capacity as Training and Standards Co-Ordinator of the N.D.C.L. E.C. and individually; Jay Graba, in his capacity as the Personnel Officer for the City of Grand Forks and Secretary of the Civil Service Commission and individually; Thomas Longmire, in his capacity as a Personnel Officer for the City of Grand Forks and Secretary of the Civil Service Commission in 1973 through March 3, 1975, and individually; Richard E. Demmers, in his capacity as a member of the Civil Service Commission and individually; Elbert E. Dahlen, in his capacity as a member of the Civil Service Commission and individually; and Gaylan Olson, in his capacity as a member of the Civil Service Commission and individually, Appellees.

No. 79–1440.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 6, 1979.

Decided July 30, 1980.
Rehearing and Rehearing En Banc
Denied Sept. 4, 1980.

Elizabeth F. Maxwell, Fargo, N. D., for appellant.

Robert B. Hunter, Grand Forks, N. D., for appellees.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.*

HENLEY, Circuit Judge.

Frances M. McCosh, a policewoman formerly employed by the City of Grand Forks Police Department, appeals from an adverse decision of the United States District Court for the District of North Dakota, The Honorable Bruce M. Van Sickle presiding, denying her claim under Title VII of the Civil Rights Act of 1964, § 701 *et seq.* as amended, 42 U.S.C. § 2000e *et seq.*,[1] of unlawful sex discrimination in employment. On appeal Ms. McCosh contests the court's determination arguing that she had been subjected to "disparate treatment" on account of

---

* The Honorable Albert G. Schatz, United States District Judge, District of Nebraska, sitting by designation.

1. 42 U.S.C. § 2000e–2(a)(1) provides:
   (a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

her sex, had been a victim of a facially neutral practice which had a "disparate impact" on members of her sex, or both, and thus is entitled to relief under Title VII.[2] We affirm the judgment of the district court.

## I.

In December, 1963 plaintiff McCosh was hired by the Police Department of the City of Grand Forks, North Dakota. Plaintiff was initially hired as a steno-clerk, but was soon promoted to a position of secretary after she passed the civil service examination for that job. Eventually, and in November, 1968, the plaintiff took and passed the civil service examination for policewoman and became a sworn policewoman of the City of Grand Forks Police Department.

Prior to assuming the position of policewoman, Ms. McCosh had formed a close relationship with the then Chief of Police, Duane Knutson. As a secretary, plaintiff had worked as an assistant to Police Chief Knutson and after her promotion to policewoman she continued to serve as a special assistant to the Police Chief. In this position plaintiff enjoyed considerable power and latitude. She attended conventions and the FBI Command Management School along with Police Chief Knutson and worked a straight day shift with weekends off.

Besides assisting the Police Chief plaintiff, after assuming the position of policewoman, also did investigatory work and participated in such activities as handling juveniles and assisting in the movement of female prisoners.

Plaintiff, however, never worked in the patrol division of the police department. Although plaintiff had inquired about the value of working in the patrol division, Police Chief Knutson had discouraged her from pursuing this option because of her value to him as an administrative assistant. Plaintiff thus decided not to ask for an assignment to the patrol division.

But in August, 1973 Duane Knutson was asked to resign from his position as Chief of Police and James O. Clague was appointed Acting Chief. About that same time plaintiff completed an application to take the examination for promotion to sergeant. On August 3, 1973 she took the examination and passed the written test with a score of seventy-eight percent. Seventy percent was a passing score. The plaintiff, however, was not considered further for the position of sergeant because she did not have one year experience in the patrol division. Eventually, Ron McCarthy, who scored the highest of all candidates on the written test with a score of ninety-six, was selected. McCarthy had excellent qualifications for the position of sergeant as indicated by his prior experience, record of performance and an oral interview.

Some time after failing to attain the desired promotion, Ms. McCosh lost her job as special assistant to the Chief of Police. In late 1973 the Acting Chief of Police, Mr. Clague, was appointed Chief of Police. As one of his first acts, he eliminated the informal position of special assistant to the Police Chief and transferred Ms. McCosh, who was the only special assistant in the police department, to another area.

After terminating the plaintiff from her position as special assistant, Police Chief Clague nonetheless tried to help Ms. McCosh advance within the police department. To help plaintiff achieve a promotion to sergeant, Clague contacted the Grand Forks City Attorney to find out if the patrol requirement could be waived. He learned, however, that the requirement was unavoidable and that plaintiff would need one year patrol experience to qualify

---

2. In the trial court Ms. McCosh, in addition to her Title VII claim, contended that she was denied due process in violation of 42 U.S.C. § 1983 and the fourteenth amendment because of the City's enforcement of certain ordinances which provided that an employee was not entitled to a hearing if punished by three days loss of pay and provided for automatic resignation if an employee accrued three consecutive unexplained absences. As to this claim, the district court also found for the defendants. Ms. McCosh, however, does not challenge these findings on appeal.

for a promotion to sergeant. Thus, on November 1, 1973 Clague assigned plaintiff to patrol duty.

But unlike other patrol officers McCosh was assigned to patrol duty on the day shift only and was not required to work on weekends or at night. This preferential treatment led to complaints from other police officers and eventually plaintiff was assigned to a rotating shift which included duty on nights and weekends.

Life as a patrol officer, however, did not seem to agree with the plaintiff. She filed numerous complaints ranging from objections as to the unsuitability of the uniform, the dirty conditions of the police cars, and the discomfort of wearing a gun belt.

During plaintiff's tenure as a patrol officer, it came to the attention of the Law Enforcement Council that plaintiff lacked certain basic training. Although the Council had never previously questioned the plaintiff's certification eligibility and in fact had specifically granted Ms. McCosh a certification card in November, 1973, the Council later withdrew her certification. The Council, however, offered the plaintiff the opportunity to attend the Law Enforcement Council School to overcome her deficiencies.

Ms. McCosh, then fifty-eight years of age, decided to take the next available session at the training school and in April, 1974 travelled to Bismarck to attend the school. But plaintiff had great difficulty adjusting to the school. She frequently complained about school procedures, to some extent antagonized other police officers and was generally uncooperative. Nonetheless, plaintiff completed her courses at the school and, after approximately a month of training, apparently qualified to reacquire her certification.

Upon completion of her training course plaintiff returned to the Grand Forks Police Department. Plaintiff, however, continued to have personal problems. Eventually, the plaintiff, under the advice of her doctor, sought psychiatric help. A psychiatrist, Dr. Olmstead, examined the plaintiff and concluded that she was suffering from nervous exhaustion and would require an indefinite leave from her employment. Dr. Olmstead informed Police Chief Clague of plaintiff's condition and of her inability to continue as a police officer.

During plaintiff's period of illness, the City Personnel Officer arranged for the plaintiff to use her sick leave, then her annual leave, and finally her leave without pay so that plaintiff could remain a member of the police force. But the City Personnel Officer, and later the Grand Forks City Auditor, informed the plaintiff that these leaves of absence would only entitle her to retain her employment until February 26, 1975. They further noted that if she did not report to work within three consecutive days after February 26, 1975 she would be terminated under the provision of the Grand Forks City Ordinance providing for automatic resignation for failure to report to work for three consecutive days. Because McCosh did not report to work within this time period, she was terminated through automatic resignation on March 3, 1975.

Shortly thereafter plaintiff brought this suit. The district court, however, found that plaintiff had failed to prove a Title VII violation. As indicated, we agree with the result reached by the district court.

II.

It is well settled that the method of proving an allegation of discrimination in employment under Title VII will differ somewhat depending on whether the Title VII claim is based on a theory of "disparate impact" or "disparate treatment." *Furnco Const. Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Kirby v. Colony Furniture Co.*, 613 F.2d 696 (8th Cir. 1980).

■ If the Title VII claim is brought on a theory that a facially neutral employment practice has a "disparate impact" on a "protected group," the initial burden is on the plaintiff to establish a prima facie case through showing that the employer's practices have a discriminatory effect. Once

the plaintiff proffers sufficient evidence to show the discriminatory effect or "disparate impact," the burden shifts to the employer to show that the practice has a "manifest relationship to the employment in question," *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971), and that the practice is "necessary to safe and efficient job performance." *Dothard v. Rawlinson*, 433 U.S. 321, 332, 97 S.Ct. 2720, 2728, 53 L.Ed.2d 786 (1977). But even if the employer meets his burden, the plaintiff may still prevail by showing the existence of a reasonable alternative to the discriminatory employment practice which would serve the employer's legitimate interest without a discriminatory effect. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975).

When, however, an individual alleges that he has been subjected to "disparate treatment" on account of sex, the standards of proof have been stated somewhat differently. First, the plaintiff must show the existence of "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Const. Co. v. Waters, supra,* 438 U.S. at 576, 98 S.Ct. at 2949, *citing Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).[3] Once a plaintiff establishes this prima facie case, the burden shifts to the employer to rebut the adverse inference by articulating "some legitimate nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). But even if the employer meets this burden, the complaining party is given the opportunity to show that the proffered evidence is merely a pretext for discrimination. *Id.* at 804–05, 93 S.Ct. at 1825. *See generally Kirby v. Colony Furniture Co., supra.*

### III.

Plaintiff in the present case alleges both theories of recovery claiming that she was a victim of a facially neutral employment practice having a "disparate impact" on members of her class, and that she was subjected to "disparate treatment" on account of her sex.

As to the claim of "disparate impact," we note that even assuming that plaintiff did in fact make out a prima facie case, it is clear that the employer met its burden by demonstrating that the practice was necessary for safe and efficient job performance. As the district court noted, the benefit of and need for one year patrol experience was sufficiently developed in the record.[4] After reviewing the record, we are similarly convinced that the City met its burden of showing the necessary relationship of the one year patrol requirement to safe and efficient job performance. Although it may be argued that the one year of patrol duty may not help some individuals to more

---

**3.** As indicated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), a plaintiff may establish a prima facie case of "disparate treatment" by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

**4.** For example, James Gibbs, a former Civil Service Commission member, convincingly elaborated on the necessity of the patrol requirement:

. . . [W]e felt that within the Police Department that a great part of the duty of the Police Department is public relations, and we felt that anyone that was going to work within the Department in any capacity and go on to continue needed the activity of the—excuse the expression—confrontation with the public on a daily basis under all kinds of conditions—adverse conditions, under different types of conditions, where it would then condition them so psychologically they would understand what the patrolman on the street, the ground level, was experiencing; and then, and only then, did we feel that it would give them a sound basis for the preparation on to the different levels within the Department.

effectively carry out the duties of sergeant, it does not follow that there is no "business necessity" for the patrol requirement. As this court noted in *Rice v. City of St. Louis*, 607 F.2d 791, 796–97 (8th Cir. 1979), when a job requires some degree of skill and there is a risk to public health and safety of hiring unqualified applicants, a reasonable preemployment requirement may be found necessary and "job related" even though such a requirement may not necessarily qualify a person for a particular job.

Plaintiff argues, however, that even assuming the City met its burden, she should still prevail because there exists an alternative business practice which would serve the employer's legitimate interest in efficiency without a similar discriminatory effect. Plaintiff suggests the alternative of waiving the patrol requirement for all employees with comparable experience.[5] We do not believe that it is a reasonable alternative to require an absolute waiver of the patrol requirement where, as here, the job requires a significant degree of skill and the risk to the public of hiring an unqualified applicant is substantial.

## IV.

We are similarly unconvinced by appellant's contention that she has been a victim of "disparate treatment" on account of sex and thus should be entitled to relief under Title VII. Plaintiff essentially claims three instances of such "disparate treatment": (1) defendants' refusal to consider her for promotion to sergeant because she had not met the one year patrol requirement; (2) defendants' refusal to permit her to return to limited duty after her medical leave of absence; and (3) defendants' actions in re-

gard to the withdrawal of her certification as a police officer.

■ As to her claim of "disparate treatment" by reason of defendants' refusal to waive the one year patrol duty requirement for promotion to sergeant, we note that the record fails to disclose that she was treated differently than similarly situated males. Indeed, the record reveals that the one year patrol requirement was applied equally to males and females, and plaintiff herself concedes that she knew of no males who were promoted to sergeant without the one year patrol experience.

But in any event, even assuming plaintiff had shown "disparate treatment," plaintiff would still not be entitled to relief because the City of Grand Forks met its burden of showing legitimate nondiscriminatory reasons for disallowing a waiver of the requirement. As previously noted, the need for and benefit of the one year patrol requirement was sufficiently established in the record, particularly for a job involving a significant degree of skill and a great risk to the public of hiring unqualified applicants.

■ With respect to plaintiff's claim of "disparate treatment" by reason of the police department's refusal to permit her to return to limited duty after a medical leave, it is clear that no officer had ever been allowed to return to limited duty where, for psychiatric reasons, the officer could not carry a weapon. Furthermore, the employer established a nonpretextual, nondiscriminatory explanation for the alleged disparate treatment. Quite simply, the police department regulations required all police officers, whether on full or limited duty, to carry firearms. Because plaintiff's psychia-

---

5. Appellant seems to rely on *United States v. City of Philadelphia*, 573 F.2d 802 (3d Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978), for the proposition that requiring waiver of the patrol requirement for women with comparable experience is a reasonable alternative. But that case must be distinguished. In *City of Philadelphia* the Third Circuit held that a district court did not abuse its discretion in directing transfer of qualified female police officers who had experience comparable to one year of police officer experience.

In that case, however, a consent order had specifically overruled the police department durational requirement for promotion apparently because the police department had granted exemptions from the requirement to certain male officers. In the present case, appellant does not and cannot claim that the City of Grand Forks allowed any police officer, male or female, an exemption or waiver from the one year patrol requirement for promotion to sergeant.

trist would not release plaintiff for police work if she had to carry a weapon, we believe the City did in fact advance a legitimate, nonpretextual explanation for not rehiring the plaintiff.

■ Finally, we are not persuaded by plaintiff's argument of disparate treatment by reason of the police department's action in relation to the withdrawal of her certification as sergeant. Ms. McCosh was not treated differently than similarly situated males. Unlike other officers, she had never attended the Basic Training Course, the prerequisite to certification. And while there was a provision for "grandfathering in" police officers who were routinely exercising police duties prior to 1970, it is, of course, highly questionable whether McCosh was routinely exercising police power as an administrative aide to Knutson.

But, in any event, we are convinced that the City's actions were legitimate and nonpretextual. The City had an obligation to see that police officers are qualified to do important and dangerous work in the public interest. Here, the City did no more than fulfill its responsibility requiring that a police officer take the basic training necessary to carry out police duties properly.

Affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, McCosh established a prima facie case of sex-based discrimination by showing the discriminatory effect of the City's actions. She did so by showing (1) that until she sent a letter to the Equal Employment Opportunity Commission inquiring about the filing of a sex-discrimination charge and complained of sex discrimination to the Grand Forks Civil Service Commission, she was the only woman police officer in the Grand Forks Police Department; (2) that no woman in the police department had ever achieved a rank higher than police woman; (3) that men were routinely assigned to patrol service, automatically achieving the one-year service requisite for promotion, while McCosh was not assigned to patrol service; and (4) that at the time of trial, no woman other than McCosh had served the police department for more than two and one-half years.

The district court erred in failing to shift to the defendants the burden of proving that the procedure for selecting sergeants was not discriminatory but was necessary for effective job performance. The improper assignment of the burden of proof would be grounds for reversal unless we are convinced the defendant has clearly met its burden, *Thompson v. City of Omaha*, 623 F.2d 46, at 49, (8th Cir. 1980); *cf. Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). I have carefully examined the record and cannot say that the defendant met its burden of showing that the one-year patrol requirement was necessary for safe and effective performance of the job of sergeant.

A witness for the City explained that one year of patrol experience served to familiarize the officer with the many conditions that are confronted by a street-level officer. While we do not take issue with the desirability of this goal, the requirement of one year of patrol experience is not necessary to achieve that goal in McCosh's case. She had participated in many investigations of rape cases, juvenile cases, narcotics cases and other matters during her five-years as a sworn police officer, exposing her to a wide variety of people and conditions. Her work as a police officer was consistently evaluated as excellent or above average. Nothing in the record indicates that her experience was any less valuable than that of a patrol officer. Although the City has a legitimate interest in assuring its citizens that police officers serving in leadership positions possess the requisite skill and experience for those positions, an arbitrary requirement that is not necessary to the achievement of that goal and that operates to discriminate against a member of a class protected by Title VII cannot be tolerated. In my view, the case should be remanded for an order directing the City to develop a promotional selection procedure in compliance with Title VII, and for a determination of the appropriate remedy for McCosh.

The determination of remedy is not an easy task. McCosh's problems did not end with the City's failure to consider her for the position of sergeant. She was assigned to patrol duty at the age of nearly fifty-seven years, and in the ensuing year, she both engaged in and was subjected to a course of conduct that resulted in her treatment by a psychiatrist specializing in psychosomatic medicine. It is not difficult to directly trace these problems to the City's unlawful application of the patrol experience requirement and its resulting failure to consider McCosh for promotion. More problematic is her psychiatrist's testimony that he would not release her back into the stressful situation in which she previously worked and would not consent to a promotion to sergeant. He testified that McCosh could have returned to any other less stressful position within the department, such as a day shift or indoor work of some kind. Under these circumstances, McCosh may be entitled to back pay based on the police officer's position, to consideration for promotion or to some other remedy, the determination of which should be left to the district court.