Eva J. CUMMINGS, Plaintiff,

v.

**SCHOOL DISTRICT OF the CITY OF LINCOLN, in the COUNTY OF LANCASTER, in the STATE OF NEBRASKA, Defendant.**

Civ. No. 78–L–288.

United States District Court, D. Nebraska.

Aug. 18, 1980.

Eva J. Cummings, pro se.

Edwin C. Perry, Lincoln, Neb., for defendant.

RICHARD E. ROBINSON, Senior District Judge.

THIS ACTION is brought pursuant to Title VII of the *Civil Rights Act of 1964* as amended, 42 U.S.C. § 2000e *et seq.* The Court has jurisdiction under 42 U.S.C.

§ 2000e–5(f).[1] The case was tried to the Court without a jury, and this Memorandum constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

The *pro se* plaintiff, Eva Cummings,[2] alleges that she is the victim of sex discrimination. She claims that her employer failed to promote her to a position for which she is qualified solely because of her sex. The facts which precipitated this controversy are set out below.

## I

The plaintiff was employed by the defendant school district as an accountant from July 31, 1967 until June 4, 1975. During the years the plaintiff was employed by the defendant, there were from seven to nine employees in the school district's accounting department. The department was divided into divisions which included accounts payable, payroll, and general accounting/accounts receivable. Through her tenure with the defendant, Ms. Cummings was employed as an Accountant Auditor-I in the accounts payable division. There is no question that the plaintiff consistently performed her accounting duties in a competent and professional manner. There is also no question that practically from the beginning of her employment, the plaintiff had difficulty getting along with her fellow employees and with her immediate supervisor. The problems which the plaintiff had in dealing with those around her were chronic and intensified over the years.[3]

In March of 1975, the plaintiff applied for a transfer from her job as Auditor-I in the accounts payable division to the position of Auditor-II in the general accounting accounts receivable division. The Auditor-II job became available when Mr. Milton Haase retired from that position after several years with the school district. The only applicant besides the plaintiff for the position of Auditor-II was Gary Lee. Mr. Lee joined the school district in 1971 and worked in the general accounting division with Mr. Haase.

Ms. Cummings received a job description for the Auditor-II position in April of 1975 and was interviewed for that position in May of 1975 by Dr. Gayle Hurlbert, a member of the defendant's personnel office. The interview consisted of a seventy question Administrator Preceiver Test. After the interview, the plaintiff submitted to the personnel department a memo entitled "Background For Communication Problems" which detailed the plaintiff's difficulties in dealing with the other employees and with her supervisor. The memo was offered to explain the plaintiff's side of her "communication problems" and to be considered as part of her application for the position of Auditor-II.

The other applicant for the position of Auditor-II, Gary Lee, was interviewed by Dr. Carroll Swain, the Assistant Superintendent of Personnel for the school district.

1. The plaintiff received a "right to sue letter" from the Attorney General's Office [Filing # 1] in November of 1978 and commenced suit on December 12, 1978, well within the ninety day period set out in the statute.

2. Eva Cummings was married shortly after this suit commenced and became Eva Hruska. For the sake of clarity, the plaintiff is referred to by her maiden name through this opinion.

3. An early symptom of plaintiff's personnel difficulties is found in her job performance ratings in 1968 and 1969. On a scale from "A" to "E" with "A" being the best rating, the plaintiff received a "B" rating in the area of cooperation with her fellow workers. This score deteriorated in 1973 to a "C". In contrast, the plaintiff's ratings in all other categories including quality of work and efficiency was consistently an "A". In latter years, the plaintiff sent several memos to her supervisor detailing the friction she experienced with her peers. One such memo which was received in evidence illustrates the situation. The memo provides in part: "I have not had ONE WORD of voluntary conversation directed my way since I was told off when I was on coffee break in your office. . . . I am prepared to ignore this kind of childishness as long as she wishes to make an "___" of herself. . . . But the next time Performance Ratings go to the Personnel Dept., I'd better not be the only one who gets busted in rating for having difficulty in getting along with others."

Dr. Swain and the personnel office are responsible for filling vacancies in the school district and thus made the hiring decision for the Auditor-II position. Like the plaintiff, Gary Lee was given the Administrator Preceiver Test when he interviewed for the Auditor-II job. Mr. Lee was recommended for the position by both Mr. William Reisher and Dr. Robert DenHartog. Mr. Reisher was the supervisor of accounting and the immediate superior of the plaintiff and Mr. Lee. Dr. DenHartog served as the Associate Superintendent of Business Affairs with overall responsibility for the school district's accounting office.

On May 21, 1975, the plaintiff was notified by Dr. Swain of his decision to appoint Mr. Lee to the position of Auditor-II. The plaintiff voluntarily terminated her employment with the defendant effective June 4, 1975 and filed a complaint with the Equal Opportunity Commission.

## II

■ For the plaintiff to prevail in this action she must prove by a preponderance of the evidence that the defendant denied her the Auditor-II position because of the impermissible consideration of her sex. Initially, the plaintiff must make out a prima facie case of sex discrimination under the guidelines articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This requires that she prove

(i) That [s]he belongs to a . . . minority; (ii) that [s]he applied and was qualified for the job for which the employer was seeking applications; (iii) that despite [her] rejection, the position remained open and the employer continued to seek applications for persons of complainant's qualifications.[4] 411 U.S. at 802, 93 S.Ct. at 1824.

If the plaintiff establishes a prima facie case, the burden of going forward with the evidence shifts to the defendant to articulate some legitimate nondiscriminatory reason for rejecting the plaintiff. Even if the defendant meets this burden and establishes a legitimate reason, the plaintiff is given the opportunity to show that the reason articulated by the defendant was a mere pretext for sex discrimination. *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 803–804, 93 S.Ct. at 1824–1825. *See also, Furnco Const. Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Kirby v. Colony Furniture Co.,* 613 F.2d 696 (8th Cir. 1980).

■ The Court finds that the plaintiff met her initial burden under *McDonnell Douglas* in that she made out a prima facie case: The plaintiff is a member of a protected minority and applied for a position for which she is qualified.[5] In addition, the position which plaintiff sought remained open and was subsequently filled by another applicant.

---

4. The test articulated in *McDonnell Douglas* is utilized to prove an allegation of discrimination under Title VII based on a theory of "disparate treatment." *Compare Furnco Const. Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) and *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). While the plaintiff's *pro se* complaint recites allegations which might be construed as charging the defendant with "disparate impact," there is no evidence in the record to support the claim that a facially neutral employment practice actually falls more harshly on a "protected group." *See, Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *Kirby v. Colony Furniture Co.,* 613 F.2d 696, 703 (8th Cir. 1980). The difference in the kinds of proof required to establish a case of "disparate treatment" versus a case of "disparate impact" was recently articulated by the Eighth Circuit Court of Appeals in *McCosh v.*

*City of Grand Forks,* 628 F.2d 1058 at 1061–1063 (8th Cir. 1980).

In this action, the Court finds from the evidence actually presented that the plaintiff proceeded under a theory of "disparate treatment" and thus mindful of the distinction set out in *McCosh* analyses this case under the *McDonnell Douglas* standard.

5. It is undisputed that the plaintiff is a competent accountant and that she possessed the requisite accounting skills to perform the job of Auditor-II. *Cf. Lewis v. Percision Optics Inc.,* No. CV 77-0-369, slip op. at 8 (D.C.Neb. May 17, 1979) (where this Court held that the plaintiff failed to make out a prima facie case under Title VII because she failed to prove that she had the technical skills to perform the job she applied for).

Proof of a prima facie case does not, however, end the analysis; it is merely a precursor to further inquiry. In *Furnco Const. Corp., supra*, the Court made clear that a prima facie showing under *McDonnell Douglas* is "quite different" from an ultimate finding of discrimination under Title VII. Writing for the Court, Mr. Justice Rehnquist observed that "[a] prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. To dispel the adverse inference from a prima facie showing under *McDonnell Douglas*, the employer need only articulate some legitimate nondiscriminatory reason for the employee's rejection." *Furnco Const. Corp., supra*, 438 U.S. at 577–578, 98 S.Ct. at 2949–2950.

In this case, the defendant seeks to rebut the inference of discrimination by claiming that Ms. Cummings was denied the position of Auditor-II not because of her sex but because the other applicant, Gary Lee, was better qualified. The defendant claims that its decision to promote Mr. Lee instead of the plaintiff was based on its determination that of the two applicants Mr. Lee was superior. In support of its position, the defendant points out that while both Mr. Lee and the plaintiff are competent auditors Mr. Lee did a better job of dealing with people.[6] For example, while Ms. Cummings' performance ratings in the area of cooperation with her fellow workers deteriorated over the years from a "B" rating to a "C" rating, Mr. Lee's rating in the same area was an "A". The memo which plaintiff herself submitted along with her application for the Auditor-II job describing her difficulties with other employees also illustrates the friction between the plaintiff and her co-workers. The defendant also points out that Mr. Lee was recommended for the Auditor-II job by his superiors and that the Administrator Preceiver Test which both Mr. Lee and the plaintiff took indicated that Mr. Lee had greater potential.

In an effort to meet her ultimate burden of persuasion, the plaintiff makes several allegations which merit discussion. The plaintiff points out that she has several years of seniority over Mr. Lee and that it is the defendant's policy to promote the employee with seniority when two equally qualified employees apply for the same position. Plaintiff claims that the fact that a male employee with less seniority was promoted over her suggests that she was discriminated against because of her sex. What this contention overlooks is that the defendant's decision to promote Mr. Lee was explicitly based on its determination that Mr. Lee was not equally qualified but, in fact, was better qualified than the plaintiff. There is ample evidence in the record that the conclusion that Mr. Lee was a more able candidate was grounded upon objective criteria and was not merely a pretext for discrimination.[7] As a result, the fact that the plaintiff had more seniority does not further her cause. Obviously, a policy which bases promotion solely upon seniority rewards longevity at the expense of excellence.

The plaintiff also contends that because of the problems she had with her supervisor, Mr. Reisher, he deliberately set out to block her promotion. Specifically, the plaintiff claims that Mr. Reisher lowered her performance ratings, rewrote the job description for the Auditor-II position,[8] and

6. In this regard it is noteworthy that the job of Auditor-II involved dealing with people. Milton Haase, the former Auditor-II, testified that in the normal course of his job he dealt with a variety of people and organizations.

7. For example, the Administrator Preceiver Test which was given to both the plaintiff and Mr. Lee is specifically designed to generate the same results regardless of who is conducting the interview. The test showed that Mr. Lee generally scored better than the plaintiff. In any event, Ms. Cummings can hardly complain that the test is subjective. Ms. Cummings was interviewed by Dr. Gayle Hurlbert. Dr. Hurlbert is a female and chairs the school district's affirmative action program.

8. When the position of Auditor-II became vacant, Mr. Reisher along with Dr. DenHartog drafted a revised description of the job. The

recommended Mr. Lee, all to ensure that the plaintiff did not get the Auditor-II job. While the plaintiff's difficulties with Mr. Reisher are undisputed, there is nothing in the record to indicate that any of Mr. Reisher's actions were motivated by the fact that Ms. Cummings is a member of a protected minority.[9] In fact, the decision to promote Mr. Lee was not made by Mr. Reisher but by Dr. Swain who testified that in reviewing the plaintiff's application he considered the memo which the plaintiff submitted setting out her version of the difficulties with Mr. Reisher. In short, there is no evidence that anyone discriminated against the plaintiff because of her sex. At best, the evidence and arguments advanced by the plaintiff question the wisdom of the defendant's decision to promote another employee. Assuming for the sake of argument that the defendant did not make an eclectic choice, there is still no evidence that its choice was impermissibly influenced by the plaintiff's sex.

After a careful review of the evidence and the entire record, the Court finds that the defendant has successfully articulated a legitimate nondiscriminatory reason for its decision to promote Mr. Lee instead of the plaintiff. The Court finds that the defendant's decision to reject the plaintiff's application was based on its sincere business judgment that Mr. Lee was better qualified for the position of Auditor-II. No opinion is expressed regarding the propriety of the defendant's promotion decision. This Court does not sit as an arm-chair manager second guessing an employer's hiring and promotion decisions. Rather, our inquiry is properly limited to whether an employer's decision is infected by the impermissible considerations of race or sex. "Congress has not commanded that the less qualified be preferred over the better qualified simply because of minority origins. Far from disparaging job qualification as such, Congress has made such qualifications the controlling factor, so that race, religion, nationality,

and sex become irrelevant." *Griggs v. Duke Power Co.*, 401 U.S. 424, 436, 91 S.Ct. 849, 856, 28 L.Ed.2d 58 (1970). In this case, there is not a shred of evidence that the defendant's decision not to promote Ms. Cummings was sexually motivated or that the decision would have in anyway been different if Ms. Cummings did not belong to a protected minority.

Therefore, the Court finds that the plaintiff has failed to prove that she was denied the Auditor-II position because of her sex. The defendant has articulated a legitimate nondiscriminatory reason for rejecting the plaintiff and the plaintiff has not established that the defendant's rationale is a mere pretext for discrimination.

---

plaintiff contends that their description was intentionally drafted to favor Mr. Lee.

**9.** No opinion is expressed or should be inferred regarding the propriety of Mr. Reisher's actions.